UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN RE EX PARTE APPLICATION OF SBK
ART LLC,

                                Petitioner,

v.

for an order pursuant to 28 U.S.C. § 1782 to
conduct discovery for use in foreign proceedings.
-------------------------------------------------------------x

Case No.: XX-XX-XXXX

**MEMORANDUM OF LAW IN SUPPORT OF SBK ART LLC'S *EX PARTE*
APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER TO TAKE
DISCOVERY FROM HPS INVESTMENT PARTNERS
<u>FOR USE IN FOREIGN PROCEEDINGS</u>**

Robert S. Landy
Renée L. Jarusinsky
Patrick Mattina
FORD O'BRIEN LANDY, LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
Telephone: (212) 858-0040
rlandy@fordobrien.com
rjarusinsky@fordobrien.com
pmattina@fordobrien.com

Counsel for Applicant
SBK ART LLC

TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ...........................................................................................................................2

I.     The Fortenova Group and the HPS Loan.............................................................2

II.    SBK's Ownership of Fortenova Group and the Sale to Mr. Alketbi ............................4

III.   The Fortenova Group's Actions After the Sale of SBK to Mr. Alketbi ......................5

IV.   The Fortenova Group Uses the HPS Loan to Manufacture a Refinancing Crisis and to Engineer a Controlled Sale of MidCo to Open Pass ........................................................6

V.    The Sale of MidCo.............................................................................................8

VI.   The Requested Discovery is For Use in the Foreign Proceedings................................9

A.  The Malta Action .........................................................................................9

B.  The Netherlands Actions.................................................................................10

i.     The First Dutch Summary Proceeding........................................................10

ii.    The Dutch Annulment Proceedings ..........................................................11

iii.   The Dutch Declaratory Proceeding...........................................................11

iv.   The Merger Opposition Proceedings ........................................................11

C.  The EU Actions.................................................................................................11

ARGUMENT .................................................................................................................................12

A.  The Application Meets the Three Statutory Requirements..................................12

i.     HPS "Resides" or is "Found" in the Southern District of New York...................13

ii.    The Requested Discovery is "For Use" in a "Foreign Proceeding" ......................13

iii.   SBK is an "Interested Person" ..................................................................15

B.  The Four Discretionary Factors Weigh in Favor of the Application ..................................16

i.     HPS is Not a Participant in the Foreign Proceedings ............................................16

ii.      The Foreign Tribunals are Receptive to U.S. Judicial Assistance ........................17

iii.     The Application Does Not Circumvent the Rules of the Foreign Tribunals ........18

iv.      The Application is Narrowly Tailored to Avoid Unnecessary Burdens in
         Accordance with the Federal Rules of Civil Procedure ........................................20

C.  Granting the Application *Ex Parte* is Appropriate and Fair .............................................20

CONCLUSION ....................................................................................................................................21

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Associacao dos Profissionais dos Correios v. Bank of New York Mellon Corp.*,
No. 22-MC-0132 (RA) (KHP), 2022 WL 4955312 (S.D.N.Y. Oct. 4, 2022) ........................ 20

*Automotive US, Inc., et al. v. Luxshare LTD*,
596 U.S. 619 (2022) ................................................................................................. 13

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) ...................................................................................... 19

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) .................................................................................... 17

*Gorsoan Ltd v. Bullock*,
F. App'x 7 (2d Cir. 2016) ........................................................................................ 16

*Gushlak v. Gushlak*,
486 F. App'x. 215 (2d Cir. 2012) ............................................................................ 20

*In re Accent Delight Int'l Ltd.*,
791 F. App'x 247 (2d Cir. 2019) ............................................................................. 16

*In re Al-Attabi*,
21-MC-207 (VSB), 2021 WL 4027021 (S.D.N.Y. Sept. 3, 2021) ........................... 13

*In re Application for an Order Permitted Metallgesellschaft AG to Take Discovery*,
121 F.3d 77 (2d Cir. 1997) ...................................................................................... 18

*In re Application of Esses*,
101 F.3d 873 (2d Cir. 1996) .................................................................................... 12

*In re B&C KB Holding GmbH*,
No. 22-MC-00180 (LAK) (VF), 2023 WL 1777326 (S.D.N.Y. Feb. 6, 2023) ........................ 15

*In re Bank J. Sarasin AG*,
25-MC-00369 (MMG), 2025 WL 3171876 (S.D.N.Y. Nov. 13, 2025) ................................... 16

*In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C.
§1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*,
No. 15-MC-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ..................................... 17

*In re GMJ Asset Mgmt. Co., Inc.*,
No. 22-MC-123 (JW), 2022 WL 4547445 (S.D.N.Y. Sept. 29, 2022) .................................. 13

*In re Guriev*,
  25-MC-0128 (JAV), 2025 WL 2381702 (S.D.N.Y. Aug. 15, 2025).........................................16

*In re Hornbeam Corp.*,
  722 F. App'x 7 (2d Cir. 2018) ......................................................................................21

*In re Itau Unibanco S/A – Nassau Branch*,
  No. 1:24-MC-00459 (KHP), 2025 WL 918462 (S.D.N.Y. Mar. 26, 2025) ........................16, 19

*In re Oasis Core Investments Fund Ltd.*,
  No. 23-MC-402 (SHS), 2024 WL 472984 (S.D.N.Y. Feb. 7, 2024)........................................13

*In re Safra*,
  No., 21-MC-0640 (GHW) (JLC), 2022 WL 3584541 (S.D.N.Y. Aug. 22, 2022) ...................17

*In re SBK Art LLC*,
  No. 24-MC-0147 (PAE) (RFT), 2024 WL 4264893 (S.D.N.Y. July 30, 2024)......................17

*In re Tiberius Grp. AG*,
  No. 19-MC-467 (VSB), 2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020)....................................18

*In re Top Matrix Holdings Ltd.*,
  18 Misc. (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ....................................................19

*In re Zarzur*,
  22 Misc. 348 (AT), 2024 WL 81517 (S.D.N.Y. Jan. 8, 2024) ................................................21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) .........................................................................................15, 16, 17, 18

*Jiangsu Steamship Co.*,
  No. 14-CV-9997 (CM), 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ..............................13, 14

*Mangouras v. Squire Patton Boggs*,
  980 F.3d 88 (2d Cir. 2020) ......................................................................................................12

*Matter of Upper Brook Companies*,
  No. 22-MC-97 (PKC), 2022 WL 18046694 (S.D.N.Y. Dec. 29, 2022)...................................18

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ...............................................................................12, 14, 18, 20

*Qualcomm Incorporated*,
  No. 18-MC-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018)...................................18

*Sampedro v. Silver Point Cap., L.P.*,
  818 F. App'x 14 (2d Cir. 2020)...........................................................................................18, 19

**<u>Statutes</u>**

28 U.S.C. § 1782......................................................................................................Passim

Rules

Fed. R. Civ. P. 26...............................................................................................................20

## PRELIMINARY STATEMENT

This application seeks to assist SBK ART LLC ("SBK") with discovering evidence to expose a duplicitous scheme perpetrated against it. Specifically, a scheme that caused damages to SBK by depriving it of its (indirect) ownership rights and benefits in Fortenova Grupa d.d. ("Grupa"), a major food producer and retailer headquartered in Zagreb, Croatia.

In short, SBK was the victim of a fraudulent corporate raiding scheme, engineered to force the sale of its (indirect) stake in Grupa at an artificially and highly depressed value. To right this wrong, SBK commenced numerous proceedings abroad against those it deems to be responsible, including proceedings against, among others, Pavao Vujnovac, a Croatian businessman, and a Maltese company owned by him called Open Pass Limited ("Open Pass") that was created for the purpose of holding and increasing his (indirect) stake in Grupa. SBK currently has proceedings pending in courts in Malta, the Netherlands, and before various courts in the European Union (the "EU"), including in the Court of Justice of the European Union (the "CJEU"), which among other things relate to challenging the transactions through which the fraud was perpetrated, seeking damages, and other relief (collectively, the "Foreign Proceedings").

SBK submits this application pursuant to 28 U.S.C. § 1782 ("Section 1782") (the "Application") for the Court's assistance to remedy the tort at the heart of the Foreign Proceedings. Specifically, SBK requests that the Court authorizes it to take non-party discovery from HPS Investment Partners ("HPS"), the American investment firm headquartered in New York City, for use in the Foreign Proceedings. During the time of the transactions, HPS was Grupa's primary lender. The main loan facility of EUR 1.157 billion required extension or refinancing. The defendants in the Foreign Proceedings have argued that HPS agreed to extend the loan only

through November 2024 and stated that it would not extend the loan again, whereas other potential lenders declined to provide financing so long as SBK retained any ownership interest in Grupa.

HPS will be in possession of documents and information related to the treatment, maturity, and refinancing of the HPS loan. These materials are expected to show that the Fortenova Group manufactured a "refinancing crisis" to justify the sale of Grupa's holding company to Open Pass at an artificially depressed price, which resulted in SBK losing its stake in Grupa.

The requested discovery is undoubtedly relevant to SBK's claims in the Foreign Proceedings and is fully justified under and supported by Section 1782. For the reasons set forth below, SBK respectfully requests that the Court grant the Application.

## BACKGROUND

### I.    The Fortenova Group and the HPS Loan

Fortenova Group (defined below) is one of the largest food producers and retailers in Europe and operates several prominent supermarket chains in Bosnia, Croatia, Montenegro, Serbia, and Slovenia. Fortenova Group is southeastern Europe's largest private employer, with over 45,000 employees across approximately 30 production plants and more than 2,500 sales locations and distribution centers, generating annual revenues in excess of EUR 5 billion. (Application at ¶ 6). Fortenova Group was formed in 2019 following the financial restructuring of Agrokor, a Croatian agricultural and food conglomerate that nearly went bankrupt. (*Id.* at ¶ 7). As part of that restructuring, creditors of Agrokor, including its largest creditor, Sberbank of Russia ("Sberbank"), became equity holders through depository receipts ("DRs") in a newly formed Dutch foundation called Fortenova Group STAK Foundation ("Fortenova STAK"), which held all shares in Fortenova Group TopCo B.V. ("TopCo"),  the parent of Fortenova Group MidCo B.V. ("MidCo"), which in turn was the parent of Fortenova Group HoldCo B.V. ("HoldCo"), the direct

owner of Grupa (collectively, the "Fortenova Group"). (*Id.*). At that time, the corporate structure and collection of entities of Fortenova STAK, referred to herein as the "Fortenova Group," was as follows:



All significant decisions by the Fortenova Group, such as those regarding governance, material business matters, and financing required the approval of DR Holders. (*Id*. at ¶ 8). In terms of financing, in 2019, Grupa received loans totaling EUR 1.157 billion. (*Id*.). Those loans were structured as senior floating rate notes and were secured by liens on Fortenova Group's assets. (*Id.*) HPS was the lead arranger and majority holder of those notes (the "HPS Loan") (*Id*.). The HPS Loan, which was initially due on September 6, 2023, became the single largest financial obligation of the Fortenova Group, and would later be used by it to justify changes, shape ownership, and exert control over Grupa. (*Id*. at ¶ 9).

## II.    SBK's Ownership of Fortenova Group and the Sale to Mr. Alketbi

At the start of 2022, Sberbank held the largest single block of DRs, making it the largest indirect equity owner of Grupa with an indirect voting interest of 42.51 percent. (*Id*. at ¶ 10). Following the commencement of the military conflict between Russia and Ukraine in February 2022, Sberbank, understanding that it could soon become subject to international sanctions, urgently sought to dispose of its stake in Fortenova STAK. (*Id*.). At around the same time, Sberbank transferred its holdings in Fortenova STAK to a special purpose vehicle, SBK (the applicant here). (*Id*.)

As expected, soon after the transfer to SBK, Sberbank became the subject of numerous international sanctions, including by the United Kingdom, the United States and the EU. (*Id*. at ¶ 11). The sanctions imposed on Sberbank were crippling as they froze the bank's assets, prohibited certain individuals and entities from dealing with the bank, and barred it from using the SWIFT payment system. (*Id*.). On July 21, 2022, the Council of the EU (the "Council") provided Sberbank a lifeline. (*Id*. at ¶ 12). The Council permitted Sberbank to sell its stake in various EU assets, including its DRs in the Fortenova Group, despite being subject to EU sanctions. However, the Council required that any sale be completed by October 31, 2022. (*Id*.).

Even with permission to sell SBK, finding a buyer in four months proved to be a tall order. (*Id*. at ¶ 13). The process was made even more difficult due to actions taken by the Fortenova Group that were aimed at diminishing SBK's existing governance rights and thus reducing its attractiveness to potential buyers. (*Id*.). For example, in early summer 2022, when no EU sanctions had yet been imposed on Sberbank, the Fortenova Group announced on its DR Holder portal that SBK could not exercise meeting or voting rights because of the sanctions imposed by the United Kingdom and the United States against Sberbank. (*Id*. at ¶ 14). This effectively prevented SBK

from participating in the Fortenova Group's governance during a critical sale window. (*Id.*). At the same time, Open Pass requested that DR Holder meetings be held to approve a number of significant resolutions, including: (i) implementing higher decision-making thresholds, which effectively provided Open Pass with veto power for any future resolutions; and (ii) expanding the unilateral authority of Grupa's board, which included beneficiaries of Open Pass, to approve transactions up to EUR 500 million, a tenfold increase, and, for certain items, an unlimited authority. (*Id.*). At that time, SBK managed to temporarily stop the approval of those resolutions by obtaining injunctions from courts in the Netherlands. (*Id.*).

At the eleventh hour on October 31, 2022, H.E. Saif Jaffar Suhail Markhan Alketbi, an experienced entrepreneur and investor based in the United Arab Emirates, acquired SBK from Sberbank for EUR 400 million. (*Id.* at ¶ 15). At the time of the acquisition, Mr. Alketbi was not subjected to any international sanctions, which remains true today.[1] (*Id.* at ¶ 16). Therefore, Mr. Alketbi's purchase meant that SBK was no longer subject to any international sanctions based on its prior relationship with Sberbank. (*Id.*). The sale of SBK to Mr. Alketbi led him to become the largest minority holder of Fortenova STAK with an indirect voting interest of 42.51 percent. (*Id.*). The second largest equity holder was Open Pass (and thus Mr. Vujnovac), which held an indirect interest of nearly 28 percent. (*Id.*).

### III.    The Fortenova Group's Actions After the Sale of SBK to Mr. Alketbi

After acquiring SBK, Mr. Alketbi immediately informed the Fortenova Group's management of the transaction and sought to meet and discuss the company's future. (*Id.* at ¶ 17). Mr. Alketbi was met with much resistance from management, which was the result of a concerted

---

[1] In addition to being an investor and philanthropist, Mr. Alketbi previously served as the Director General of The Office of His Highness the Crown Prince of Dubai, Sheikh Hamdan bin Mohammed bin Rashid Al Maktoum. (*Id.* at ¶ 15).

effort by Open Pass, Mr. Vujnovac, and the Fortenova Group's Croatian management, to carry out a scheme to squeeze out SBK's shareholder rights and seize control of Fortenova Group. (*Id*.).

In furtherance of this effort, the Fortenova Group took the position that Mr. Alketbi's purchase was not bona fide and engaged in a public campaign to smear SBK and Mr. Alketbi. (*Id*. at ¶ 18). The Fortenova Group's position was that SBK remained under the influence of Sberbank, a sanctioned entity, which meant that Fortenova Group could not have any dealings with SBK or Mr. Alketbi. (*Id*.). To advance that position, the Fortenova Group retained a law firm to assist in lobbying the Council to impose sanctions on SBK. Those lobbying efforts paid off, as the Council announced in December 2022 that SBK was subject to EU sanctions due to its alleged continued association with Sberbank. (*Id*. at ¶ 19).

The Fortenova Group then exploited this development to exclude SBK and Mr. Alketbi from DR Holder meetings and approved the above governance changes. (*Id*. at ¶ 20). Although two-thirds of the DR Holders present at the meeting opposed the changes, they were approved with Open Pass's votes since the Dutch court of appeal, in summary proceedings, ruled that SBK was not permitted to vote on any agenda item. (*Id*.).

### IV.  The Fortenova Group Uses the HPS Loan to Manufacture a Refinancing Crisis and to Engineer a Controlled Sale of MidCo to Open Pass

Since late summer 2022, the Fortenova Group's management had been in discussions about the maturity of the HPS Loan, which was due on September 6, 2023. (*Id*. at ¶ 21). Management's position was that the presence of sanctioned DR Holders in the ownership structure (i.e., SBK) created serious issues for refinancing the HPS Loan. (*Id*.). Those "concerns" served as the central rationale for a series of measures that framed the HPS Loan as an urgent financial crisis and ultimately led to the manufactured and distressed sale of MidCo to Open Pass. All the while, refinancing options for the HPS Loan were readily available. (*Id*.).

In particular, in or around April 2023, HPS offered to extend the maturity date of the HPS Loan to November 2024. (*Id*. at ¶ 22). Further, the Fortenova Group discussed refinancing options with some of the world's largest banks, including J.P. Morgan Chase, Citi Bank, and Credit Suisse. (*Id*.). Rather than accepting that offer, on April 26, 2023, the Croatian management of Grupa announced that it was launching a change in its shareholding and capital structure and that it would seek potential investors to purchase MidCo. (*Id*. at ¶ 24). Grupa's announcement also stated that it had engaged Lazard Frères Gestion SAS ("Lazard"), a global investment bank with headquarters in New York, to conduct a sale process and to initiate a value discovery process by testing a prospective sale of 100 percent of MidCo's shares. (*Id*. at ¶ 25). This was announced under the pretext that the sanctioned DR Holders created difficulties for its operations, and that while Grupa had a non-binding short-term refinancing offer from HPS itself, absent changes made to the capital structure, any refinancing of the HPS Loan would diminish the Fortenova Group's value. (*Id*.).

In May 2023, Lazard conducted a private tender process, which suffered from numerous deficiencies, including that Lazard: (i) set abnormally short deadlines for potential purchasers to bid and conduct due diligence; (ii) created an impression that default of the HPS Loan was imminent by inviting the potential bidders to indicate their proposals for refinancing; (iii) invited only a limited number of potential investors to bid for MidCo; and (iv) excluded Mr. Alketbi from the bidding process notwithstanding his repeated written expressions of interest to Lazard, Fortenova STAK, and TopCo. (*Id*. at ¶ 26).

The deficiencies in Lazard's sale process underscore that the process was not designed to maximize value for all DR Holders by obtaining a fair market price (whatever it would have been) from the most suitable bidder. Instead, it was designed to (successfully) ensure that no bids would be received, which could then be used to justify the sale of MidCo to Open Pass at an artificially

depressed price. (*Id*. at ¶ 27). As intended, none of the potential investors invited to submit offers to purchase MidCo expressed any interest in making such a purchase, which, by itself, is telling, given that Fortenova Group is one of the largest food producers and retailers in southeastern Europe. (*Id*. at ¶ 28). In sum, the goal of the Lazard sale process was to create the appearance of a distressed sale that was not attractive to potential bidders and the Fortenova Group succeeded in doing so. (*Id*.).

## V.    The Sale of MidCo

Upon achieving the goal of the flawed sale process, the Fortenova Group, effectively led by Mr. Vujnovac, quickly moved to sell MidCo to Open Pass and Mr. Vujnovac himself at an enormous discount. (*Id*. at ¶ 29). Not surprisingly, before finalizing the sale, the Fortenova Group approved and formally extended the maturity date of the HPS Loan to November 2024. (*Id*.). Rather than have Lazard conduct a second tender process or another market test after extending the maturity date, the Fortenova Group moved forward with the insider sale to Open Pass. (*Id*. at ¶ 30). The seamless extension of the maturity date and the refusal to conduct a genuine sale process confirms that the HPS Loan "refinancing crisis" was contrived and used to justify a controlled, urgent, and distressed sale process to fit Mr. Vujnovac's wider purpose of taking over the Fortenova Group. (*Id*.).

On October 16, 2023, Open Pass sent a binding offer for purchase of MidCo to a new Dutch holding structure created by it for a price between EUR 500 million and 660 million. (*Id*. at ¶ 31). The Fortenova Group then arranged for "expert" opinions to be issued by Lazard, Houlihan Lokey LLC, and KPMG Croatia d.o.o. confirming that the amount proposed by Open Pass constituted a fair price for MidCo. (*Id*. at ¶ 32). However, the conclusions reached by the three experts were driven almost entirely by the distorted and unduly pessimistic 2024 business plan updated and

supplied by Grupa's management just before issuance of the opinions, on which the experts were instructed to rely and which they did not intend to independently substantiate or verify, thereby skewing their opinions on whether the sale price was "fair." (*Id*.). On December 19, 2023, a DR Holders meeting was held to rubber stamp the sale of MidCo to Open Pass from the non-sanctioned DR Holders, including Open Pass itself, and TopCo concluded the transaction less than ten days later on December 28, 2023. (*Id*. at ¶ 33). Upon the conclusion of the transaction and its completion in July 2024, SBK lost any ownership of MidCo and thus Grupa. SBK's loss was Mr. Vujnovac's gain, as he became the majority indirect owner of Grupa. (*Id*.).

The fraudulent scheme described above formed the basis of the Foreign Proceedings.

## VI.    The Requested Discovery is For Use in the Foreign Proceedings

SBK requests discovery from HPS to assist with its pending claims in foreign courts outside of the United States, including its ongoing lawsuits in Malta, the Netherlands, and the EU courts, in relation to the transactions and damages suffered as a result of the actions of the Fortenova Group, Open Pass, Mr. Vujnovac, and others. Specifically, SBK seeks information and documents from HPS regarding the HPS Loan, including communications with the Fortenova Group and others concerning the loan and any discussions of its extension or refinancing. Those communications will show the refinancing options available to the Fortenova Group prior to commencing the sale process for MidCo, and whether HPS ever required SBK to be removed from the Fortenova Group's ownership structure in order to refinance the loan. This evidence will assist SBK in each of the Foreign Proceedings, which are summarized below.

### A.    The Malta Action

SBK currently has a lawsuit pending in the Civil Court of Malta seeking damages in relation to the unlawful actions of Open Pass and others, including those that resulted in the sale

of MidCo to Open Pass (the "Malta Action"). Landy Decl. Ex. A (Refalo Declaration at ¶¶ 1, 5). In the Malta Action, SBK seeks damages against Open Pass, Gain Alliance, Fortenova STAK, Mr. Vujnovac, Vladimir Tunjic, Josip Jurcevic, Damir Spudic, and Fabris Perusko (the "Maltese Defendants"). (Refalo Declaration at ¶ 5).

  B.  The Netherlands Actions

SBK is also a party to numerous proceedings pending in various courts in the Netherlands, with one case pending before the CJEU (the "Netherlands Actions"). Each of the Netherlands Actions is discussed in turn below.

  i.  The First Dutch Summary Proceeding

Prior to the sale of MidCo to Open Pass, SBK filed an application with the District Court of Amsterdam seeking an order to: (i) allow SBK to attend DR Holder meetings and for its votes to be accepted; or (ii) prohibit the Fortenova Group from changing its corporate governance rules until a decision regarding SBK's voting rights was made by a competent authority (the "First Dutch Summary Proceeding"). Landy Decl. Ex. B (Zandbergen Declaration at ¶ 5). While the District Court of Amsterdam granted SBK's application, the Amsterdam Court of Appeal overturned the lower court's ruling. (Zandbergen Declaration at ¶ 5). SBK appealed the Amsterdam Court of Appeal's ruling to the Dutch Supreme Court, which subsequently informed the parties that, in a process similar to a certified question in the United States, the Dutch Supreme Court intended to ask preliminary questions of law to the CJEU regarding the rights of sanctioned persons to participate in voting in European companies. (*Id*.). The First Dutch Summary Proceeding is ongoing pending the issuance of the CJEU's opinion, which will guide the decision of the Dutch Supreme Court. (*Id*.).

ii.   The Dutch Annulment Proceedings

SBK filed three claims against Fortenova STAK and TopCo with the District Court of Amsterdam for the annulment of corporate resolutions that were: (i) included in the agenda to the August 9, 2022 DR Holders meeting, (ii) adopted in or prior to June 2023; and (iii) related to the sale of MidCo to Open Pass (collectively, the "Dutch Annulment Proceedings"). (*Id.* at ¶ 7). All annulment claims have been stayed pending the decision in the First Dutch Summary Proceeding. (*Id.*).

iii.   The Dutch Declaratory Proceeding

On May 21, 2024, among others, Fortenova STAK, TopCo, MidCo, HoldCo, Open Pass, and Mr. Vujnovac filed a claim against SBK and others with the District Court of Amsterdam seeking declarations from the court that: (i) the Fortenova Group's resolutions approving the sale of MidCo to Open Pass were valid; (ii) the sale of MidCo to Open Pass was not unlawful; and (iii) none of the plaintiffs acted unlawfully in connection with the sale of MidCo to Open Pass (the "Dutch Declaratory Proceeding"). (*Id.* at ¶ 8). In October 2025, the District Court rejected jurisdictional challenges raised by SBK and others. (*Id.*). The proceeding is ongoing, and SBK intends to file a counterclaim for damages against the plaintiffs. (*Id.*).

iv.   The Merger Opposition Proceedings

On January 20, 2025, SBK lodged an opposition with the District Court of Amsterdam against the contemplated legal merger between (i) the Dutch holding structure that acquired MidCo, (ii) MidCo and (iii) HoldCo. The proceeding is ongoing, and the District Court is expected to schedule a hearing to take place at a certain point in the first half of 2026. (*Id.* at ¶ 8).

C.   The EU Actions

As noted above, in December 2022, the Council imposed EU sanctions on SBK. (Application at ¶ 19). Subsequently, the Council has reimposed sanctions against SBK on six

occasions, as EU sanctions are reviewed by the Council for extension every six months. Landy Decl. Ex. C (Lansky Declaration at ¶ 5). SBK has consistently challenged the renewal or relisting of EU sanctions before the General Court of the EU and the CJEU. (Lansky Declaration at ¶ 5). Currently, SBK has three ongoing proceedings before the General Court and the CJEU challenging the imposition of EU sanctions against SBK on the basis that it is no longer controlled by Sberbank (the "EU Actions"). (*Id.*). In addition, as noted above, SBK is participating in the CJEU proceeding relating to the questions presented to that court by the Dutch Supreme Court. (Zandbergen Declaration at ¶ 5).

## ARGUMENT

For the reasons set forth below, SBK respectfully submits that this Court should grant the Application because: (1) it meets each of the three statutory requirements set forth in Section 1782; (2) the four discretionary factors established by controlling case law weigh in favor of granting the Application; and (3) it is appropriate and fair for it to be granted *ex parte*.

### A.  The Application Meets the Three Statutory Requirements

Section 1782(a) requires an applicant to satisfy the following three statutory requirements: (1) the individual or company from whom discovery is sought must reside in or be found in the district in which the application is brought; (2) the discovery sought is for use in foreign proceedings; and (3) the applicant is an "interested party." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020); *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996). As set out below, SBK satisfies each of the three statutory requirements.

### i.  HPS "Resides" or is "Found" in the Southern District of New York

Under the first statutory requirement, an applicant can establish that an individual or company resides in the Southern District of New York (the "District") if its office is located within the District. *In re Oasis Core Investments Fund Ltd.*, NO. 23-MC-402 (SHS), 2024 WL 472984, at 2 (S.D.N.Y. Feb. 7, 2024) (finding that a corporation was "found" in the district because its principal place of business was located in New York City); *In re GMJ Asset Mgmt. Co., Inc.*, No. 22-MC-123 (JW), 2022 WL 4547445, at *2 (S.D.N.Y. Sept. 29, 2022) (finding that a corporation was "found" in the district as it had an office in New York City that served as its U.S. headquarters); *In re Al-Attabi*, 21-MC-207 (VSB), 2021 WL 4027021, at *2 (S.D.N.Y. Sept. 3, 2021) (same).

On its website and official corporate LinkedIn page, HPS states that it has an office within the District. The office serves as HPS's corporate headquarters and is located at 40 West 57th Street 33rd Floor, New York, NY 10019. HPS unquestionably resides within the District for purposes of Section 1782 and the first statutory requirement is satisfied.

### ii.  The Requested Discovery is "For Use" in a "Foreign Proceeding"

To satisfy the second statutory requirement, an applicant must demonstrate that the discovery sought is for use in a foreign proceeding. *Automotive US, Inc., et al. v. Luxshare LTD*, 596 U.S. 619, 623 (2022) (finding that "foreign proceedings" for purposes of Section 1782 includes only proceedings before governmental or intergovernmental adjudicative bodies); *In re GMJ Asset Mgmt. Co., Inc.*, 2022 WL 4547445, at *4  (explaining that the second statutory requirement is interpreted broadly and does not require the foreign proceedings to even be pending or imminent); *Jiangsu Steamship Co.*, No. 14-CV-9997 (CM), 2015 WL 3439220, at *4 (S.D.N.Y.

Feb. 5, 2015) (stating that the second statutory requirement extends to foreign proceedings that are reasonably contemplated).

As discussed above and set out further below, the proceedings in Malta, the Netherlands, and the EU are all ongoing and constitute foreign proceedings under Section 1782. SBK seeks evidence regarding actions taken in furtherance of the fraudulent scheme that deprived it of its indirect ownership interest in Grupa, which it will use to advance and defend its positions in each of the Foreign Proceedings. *Mees v. Buiter,* 793 F.3d 291, 298, (2d Cir. 2015) (explaining that evidence is "for use" in a foreign proceeding if it can "be employed with some advantage or serve some use in [that] proceeding").

In the Malta Action, SBK seeks damages against the Maltese Defendants in relation to the unlawful actions of Open Pass and others towards SBK, including those that resulted in the sale of MidCo to Open Pass. (Refalo Declaration at ¶ 5). SBK believes that HPS is in possession of documents and information related to the treatment, maturity, and refinancing of the HPS Loan, which will assist SBK with advancing its claims against the Maltese Defendants and will assist with defending against challenges anticipated from those defendants. (*Id*. at ¶ 7).

The Netherlands Actions all concern the corporate steps taken to prevent SBK from participating in various internal processes, including those that resulted in the sale of MidCo to Open Pass. (Zandbergen Declaration at ¶ 5). Those actions included refusing to provide SBK with information regarding the sale, the sale of MidCo at a depressed price, and denying it the right to attend and vote during DR Holder meetings. (*Id.*). The information and documents requested from HPS will show that the Fortenova Group used the HPS Loan to contrive a "refinancing crisis" to justify the sale of MidCo to Open Pass at an artificially depressed price, which will assist SBK in

the Netherlands Actions, including the Dutch Declaratory Proceeding, in which SBK is a defendant and intends to pursue a counterclaim against the plaintiffs. (*Id*. at ¶ 9).

The EU Actions center on the wrongful sanctioning of SBK after it was wholly owned by Mr. Alketbi. (Lansky Declaration at ¶ 5). The discovery sought from HPS is essential to the EU Actions because it addresses the core issue of whether Fortenova Group and its advisers influenced the Croatian government and the EU Council to impose EU sanctions on SBK. If the requested documents prove that Fortenova Group possessed advance knowledge of these sanctions or manipulated them to facilitate the HPS Loan refinancing, such evidence would be indispensable to SBK's litigation before EU Courts (*Id*.). (*Id*. at ¶ 7).

For these reasons, the discovery requested is relevant and for use in the Foreign Proceedings. The second statutory requirement is satisfied by SBK.

### iii.  SBK is an "Interested Person"

To meet the third statutory requirement, the applicant must demonstrate that it is an "interested person," which is interpreted broadly by courts to include a litigant, a potential litigant, or even a victim. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (stating that there is "[n]o doubt litigants are included among, and may be the most common example of, the interested persons who may invoke [Section] 1782" but that the text of Section 1782 "plainly reaches beyond the universe of persons designated [as] litigant[s]"); *In re B&C KB Holding GmbH*, No. 22-MC-00180 (LAK) (VF), 2023 WL 1777326, at *3 (S.D.N.Y. Feb. 6, 2023) (finding that an applicant that was the alleged victim of a fraud and had a right to submit evidence in foreign criminal proceedings was an "interested person" for purposes of Section 1782).

As set out above, SBK is the victim of a fraudulent corporate raiding scheme and is a litigant in the Foreign Proceedings. The third statutory requirement is undoubtedly satisfied.

### B. The Four Discretionary Factors Weigh in Favor of the Application

The four discretionary factors set out in the U.S. Supreme Court's decision in *Intel* strongly weigh in favor of granting the Application. Those discretionary factors include: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings; (2) the nature of the foreign tribunal and the receptivity of the foreign government or court abroad to U.S. federal court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65; *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 250 (2d Cir. 2019); *Gorsoan Ltd v. Bullock*, F. App'x 7, 8-9 (2d Cir. 2016). As set out below, each of the four discretionary factors weigh in favor of the Application.

### i.  HPS is Not a Participant in the Foreign Proceedings

HPS is not a party to or participant in any of the Foreign Proceedings, and it is not anticipated that it will be a party or participant in the future. (Refalo Declaration at ¶ 5; Zandbergen Declaration at ¶¶ 5-9; Lansky Declaration at ¶ 5); *In re Bank J. Sarasin AG*, 25-MC-00369 (MMG), 2025 WL 3171876, at *2 (S.D.N.Y. Nov. 13, 2025) (finding that the first discretionary factor weighed in favor of the application as discovery was sought from a company that was not a party to the foreign proceedings at issue); *In re Guriev*, 25-MC-0128 (JAV), 2025 WL 2381702 (S.D.N.Y. Aug. 15, 2025) (finding that because a party whom information was sought was not a participant in pending foreign proceedings, the first discretionary favor weighed in favor of discovery); *In re Itau Unibanco S/A – Nassau Branch*, No. 1:24-MC-00459 (KHP), 2025 WL 918462, at *8 (S.D.N.Y. Mar. 26, 2025) (same). In addition to not being a party to or participant in the Foreign Proceedings, it is also not alleged that HPS committed or was a willing participant

in the underlying fraud against SBK. Therefore, the first discretionary factor strongly weighs in favor of granting the Application.

### ii. The Foreign Tribunals are Receptive to U.S. Judicial Assistance

Under the second discretionary factor, courts have consistently found that absent specific directions from a foreign forum that it would reject evidence obtained with the aid of Section 1782, the factor should weigh in favor of granting the requested discovery. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (stating that a district court "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," such as proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures"); *In re Safra*, No. 21-MC-0640 (GHW) (JLC), 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) (noting that "objection to U.S. federal-court judicial assistance would have to come from official sources, such as an agent of the [foreign] government"); *In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 15-MC-417 (LAK), 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (stating that the "law on this factor is clear: District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would reject Section 1782 assistance").

Here, the courts in Malta, the Netherlands, and the EU do not prohibit or discourage evidence obtained with the aid of a Section 1782 application from being used in proceedings. (Refalo Declaration at ¶ 8; Zandbergen Declaration at ¶ 10; Lansky Declaration at ¶ 8). *In re SBK Art LLC*, No. 24-MC-0147 (PAE) (RFT), 2024 WL 4264893, at *14 (S.D.N.Y. July 30, 2024) (finding that the second *Intel* factor weighed in favor of the application when discovery was sought

for use in Malta); *Matter of Upper Brook Companies*, No. 22-MC-97 (PKC), 2022 WL 18046694, at *7 (S.D.N.Y. Dec. 29, 2022) (finding that the second *Intel* factor weighed in favor of the application when discovery was sought for use in the Netherlands); *Qualcomm Incorporated*, No. 18-MC-80134-NC, 2018 WL 6660068, at *3 (N.D. Cal. Dec. 19, 2018) (finding the second *Intel* factor weighed in favor of the application when discovery was sought for use in the General Court of the EU). Therefore, the second discretionary factor weighs in favor of granting the Application.

### iii. The Application Does Not Circumvent the Rules of the Foreign Tribunals

The third discretionary factor does not amount to a "foreign-discoverability requirement." *Mees*, 793 F.3d at 303. In other words, the evidence requested does not need to be discoverable in the foreign proceedings for a Section 1782 application to be granted. *Intel*, 542 U.S. at 261 (explaining that "[w]hile comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of [Section] 1782(a)"); *Mees*, 793 F.3d at 303 (stating that "the availability of the discovery in the foreign proceedings should not be afforded undue weight"); *In re Application for an Order Permitted Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (noting that the third discretionary factor is "not meant to authorize the denial of discovery pursuant to [Section] 1782 solely because such discovery is unavailable in the foreign court"). Rather, the "proof gathering restrictions" in the third discretionary factor are implicated "[o]nly where materials being sought are privileged or otherwise prohibited from being discovered or used." *In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020).

When applying the third discretionary factor, a court also does not need to determine if the discovery requested would be admissible for use in the foreign proceedings. *Sampedro v. Silver*

*Point Cap., L.P.*, 818 F. App'x 14, 17 (2d Cir. 2020) (stating that the Second Circuit's precedents make clear that "discovery need not be admissible to be for use in a litigation, as there is no statutory basis for such a requirement"); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (noting that "requiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such [c]omparisons of that order can be fraught with danger"). Further, an applicant does not need to first seek the discovery from the foreign tribunal where proceedings are held before pursuing a Section 1782 application. *In re Itau Unibanco S/A - Nassau Branch*, No. 1:24-MC-00459 (KHP), 2025 WL 918462, at *9 (S.D.N.Y. Mar. 26, 2025) (explaining that "the law is clear that a party seeking discovery pursuant to Section 1782 need not first seek discovery from the foreign tribunal"); *In re Top Matrix Holdings Ltd.*, 18 Misc. 465 (ER), 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020) (stating that "failure to exhaust all remedies does not demonstrate an attempt to circumvent foreign restrictions").

Here, SBK seeks documents in HPS's possession that are not subject to any "proof gathering restrictions" in the Foreign Proceedings, and SBK does not seek to violate foreign prohibitions with its discovery requests, which are made in good faith.

As set forth in the declarations of John Refalo, Dr. Gabriel Lansky, and Bart Zandbergen, the materials being sought are not privileged nor otherwise prohibited from being discovered or used in Malta, the Netherlands or the EU courts. (Refalo Declaration at ¶ 9; Zandbergen Declaration at ¶ 11; Lansky Declaration at ¶ 9). For these reasons, the third discretionary factor weighs in favor of granting the Application.

### iv. The Application is Narrowly Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules of Civil Procedure

The fourth discretionary factor requires the court to determine if the requested discovery is unduly intrusive or burdensome, which is determined by applying the standards of Rule 26 of the Federal Rules of Civil Procedure. *Mees*, 793 F.3d at 302. In this context, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacao dos Profissionais dos Correios v. Bank of New York Mellon Corp.*, No. 22-MC-0132 (RA) (KHP), 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022). The Second Circuit has instructed that it is "far preferable for a district court to reconcile whatever misgiving it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302.

Here, SBK's discovery requests are not unduly intrusive or burdensome for two reasons. First, the requests are narrowly tailored in time and scope to obtain relevant information and documents from HPS regarding the HPS Loan that will assist SBK with further exposing the fraud that was perpetrated against it by the Fortenova Group and others. Second, the information and documents sought is maintained and accessible in the normal course of business by HPS and would not be unduly burdensome for HPS to produce. Therefore, the fourth discretionary factor also weighs in favor of granting the Application.

### C. Granting the Application *Ex Parte* is Appropriate and Fair

Finally, in addition to the statutory requirements being met and the discretionary factors weighing in favor of SBK, granting the Application *ex parte* would be consistent with the plain language of Section 1782(a). The Second Circuit has recognized that granting applications under Section 1782 *ex parte* does not violate due process and that it is common practice to do so. *Gushlak*

*v. Gushlak*, 486 F. App'x. 215, 217 (2d Cir. 2012) (explaining that "it is neither uncommon nor improper for district courts to grant applications made pursuant to [Section] 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge discovery requests by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)"); *In re Hornbeam Corp.*, 722 F. App'x 7, 10 (2d Cir. 2018) (stating that "[t]his court has decided appeals from motions to quash *ex parte* without identifying any impropriety in the *ex parte* nature of the [Section] 1782 application"; *In re Zarzur*, 22 Misc. 348 (AT), 2024 WL 81517, at *1 (S.D.N.Y. Jan. 8, 2024) (noting that district courts "routinely grant [Section 1782] petitions *ex parte*").

Thus, it is entirely appropriate for this Court to grant the Application *ex parte*.

## CONCLUSION

For the reasons set forth above, SBK respectfully requests the Court to issue an Order granting the Application and authorizing SBK to serve HPS in New York with the subpoena attached as Exhibit D to the Declaration of Robert S. Landy directing HPS to produce the requested discovery in its possession, custody, or control and to appear for a deposition.


Dated: February 6, 2026                                 Respectfully submitted,

                                                        /s/ Robert S. Landy
                                                        Robert S. Landy
                                                        Renée L. Jarusinsky
                                                        Patrick Mattina
                                                        FORD O'BRIEN LANDY, LLP
                                                        275 Madison Avenue, 24th Floor
                                                        New York, New York 10016
                                                        Telephone: (212) 858-0040
                                                        rlandy@fordobrien.com
                                                        rjarusinsky@fordobrien.com
                                                        pmattina@fordobrien.com

Counsel for Applicant
SBK ART LLC